WARREN W. TAYLOR and BEULAH P. TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 11296-77.
United States Tax Court
T.C. Memo 1984-596; 1984 Tax Ct. Memo LEXIS 82; 49 T.C.M. (CCH) 74; T.C.M. (RIA) 84596; November 9, 1984. *82 Held, T reported income from his mortgage brokerage business on the cash method of accounting and therefore is not entitled to accrue a bad debt deduction. Held further, additions to tax for negligence and for failure to timely file returns sustained. Held further, T is liable for self-employment tax. Warren W. Taylor, pro se. Gary A. Benford, for the respondent. NIMS MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In separate notices of deficiency, [1] respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [2] *83 Sec. 6653(a)
Warren W. Taylor
1969
$1,780.36
$445.09
$115.93
1970
724.39
181.10
63.13
1971
1,165.71
291.42
58.29
1973
44,771.62
11,192.91
2,281.78
Beulah P. Taylor
1969
$1,780.36
$445.09
$ 89.02
1970
724.39
181.10
36.22
1971
580.71
145.18
29.04
1973
44,771.62
11,192.91
2,238.58
The issues for decision are: (1) whether Warren W. Taylor (petitioner) computed taxable income from his mortgage brokerage business on the cash or accrual method of accounting; (2) if petitioner computed taxable income on an accrual basis, whether a bad debt deduction arising from a loan petitioner had guaranteed was accruable in 1971 or a later year; (3) if the bad debt was properly accrued in 1971, whether it is deductible as a business bad debt under section 166(a), a nonbusiness bad debt subject to the limitations of section 166(d), or an ordinary and necessary business expense under section 162(a); [3]
(4) whether petitioners are liable for the addition to tax under section 6653(a) for negligence or international disregard of rules and regulations; (5) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file returns for the years 1969, 1970, 1971 and 1973; and (6) whether petitioner Warren W. Taylor is liable for self-employment tax *84 in the amount of $585.00 for 1971. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Warren W. Taylor and Beulah P. Taylor, husband and wife (during the taxable years at issue), resided at Dallas, Texas, at the time their joint petition was filed in this case. Petitioneroperated a mortgage brokerage business called the Southwest Mortgage Company (Southwest). Through Southwest, petitioner assisted clients in obtaining mortgage financing and provided management services for a fee. Frequently, petitioner would personally guarantee loans for clients to enable them to receive financing. A percentage of the financing received was paid to petitioner as a brokerage fee. In addition to owning Southwest, petitioner *85 was a co-shareholder of the Western & Southern Development Company, Inc. (Western). In January, 1971, Western acquired 92 percent of the stock of New Buena Vista Hotel Company, Inc. (New Buena) and 100 percent of the stock of Hotel Buena Vista, Inc. (Hotel Buena), a subsidiary of New Buena. Hotel Buena owned the Buena Vista Hotel and Motel (the hotel) which was located in Biloxi, Mississippi. A hurricane had damaged the hotel in August, 1969. Shortly thereafter, New Buena received a $500,000 disaster loan from the Small Business Administration (SBA). The SBA loan was secured by part of the hotel property and certain personal property of the hotel. The loan was subordinated to prior liens held by Lamar Life Insurance Company, Union Life Insurance Company and the Bank of McCrory, Arkansas, in the amounts of $1,366,268, $375,901 and $175,018, respectively. As additional security for the $500,000 loan, the SBA required James S. Love, Jr. (Love), the principal owner of the stock of New Buena at that time, to personally guarantee payment of the loan. Concurrently with Western's acquisition of the stock of New Buena, petitioner and John E. Palmer, Jr. (Palmer), the other co-shareholder *86 of Western, each issued to the SBA a written personal guaranty of the $500,000 loan. Love was then released from his personal guaranty of the loan. On February 3, 1972, Lamar Life Insurance Company foreclosed its senior lien due to default by New Buena. The proceeds from the foreclosure sale were insufficient to satisfy the senior lien. The junior SBA lien was thus cancelled and became unsecured except for the personal guarantees of petitioner and Palmer. On February 23, 1973, the SBA filed suit in the United States District Court for the Northern District of Texas (Dallas Division) against petitioner and Palmer to obtain payment on their personal guarantees. On June 9, 1976, after trial by jury, petitioner and Palmer were found jointly and severally liable for the $500,000 SBA note. An amended judgment was entered by the district court on August 12, 1976, ordering the recovery by the SBA from petitioner and Palmer of the sum of $500,000 principal, plus $171,766 accrued interest through June 9, 1976. The Fifth Circuit Court of Appeals subsequently affirmed the decision of the district court. . Petitioner has not made payment *87 on the note or judgement. Petitioners' 1969, 1970, 1971 and 1973 individual income tax returns were filed on August 29, 1974. Each of the returns was prepared by petitioner's accountant, Owen Finlan (Finlan). In orderto compute the net profit from petitioner's mortgage brokerage business, Southwest, Finlan had to ascertain whether Southwest reported income on the cash or the accrual method of accounting. [4] Petitioner told Finlan that Southwest employed the accrual method of accounting. Petitioner, however, had previously reported Southwest's net profit on the cash basis on his 1967 and 1968 joint Federal income tax returns. Petitioner subsequently gave Finlan a copy of his 1969 income tax return which indicated that the accrual method of accounting was used to report the income of Taylor-Made Homes, a former business (which became bankrupt) which petitioner had operated when he had previously lived in Illinois. Finlan thus indicated on Schedule C of each of the returns that Southwest reported income on an accrual basis. Finlan then proceeded to determine gross receipts of Southwest (i.e., the fees paid to Taylor) for each *88 of the taxable years at issue. Finlan computed gross receipts from bank deposits which Taylor had made each year. In computing Southwest's net profit for 1971, Finlan deducted $500,000 for bad debts on line 22 of Schedule C. The deduction was based on the accrual of petitioner's liability under his loan guaranty to the SBA. A $490,575 net loss for Southwest consequently resulted in 1971. In computing petitioners' taxable income for 1969 and 1970, Finlan carried back petitioners' community share of the net operating loss incurred in 1971. In computing petitioners' 1973 taxable incomes, Finlan carried forward the net operating loss. OPINION Bad Debt Deduction
In January, 1971, Western, a corporation in which petitioner was a co-shareholder, purchased 92 percent of the stock of New Buena. New Buena owned Hotel Buena, a corporation which operated the New Buena Vista Hotel and Motel. In conjunction with Western's acquisition, petitioner personally guaranteed a $500,000 SBA disaster loan to New Buena that was secured by the hotel property. In February, 1972, the SBA lien on the hotel property was cancelled at a foreclosure sale instituted by a senior lienholder. Shortly thereafter, *89 the SBA filed suit against petitioner in Federal district court to obtain payment on his personal guaranty. In June, 1976, the court ordered petitioner to pay the SBA the amount owed under the guaranty agreement. Petitioner, however, has not made payment on the note. During the taxable years at issue, petitioner operated a mortgage brokerage business called Southwest Mortgage Company. On Schedule C of their separate 1971 Federal income tax returns, petitioners each indicated that Southwest reported income based upon the accrual method of accounting.In addition, petitioners deducted their one-half community share of a $500,000 bad debt due to the accrual of petitioners' loan guaranty to the SBA. A substantial net operating loss resulted from the bad debt deduction and was carried back to petitioners' 1969 and 1970 income tax returns and carried forward to their 1973 returns. [5]
In disallowing petitioners' 1971 bad debt deduction (and the net operating *90 loss carry-backs and carry-forwards which resulted therefrom), respondent first contends Southwest reported income on the cash rather than the accrual method of accounting and therefore the bad debt should not have been accrued. Respondent argues in the alternative that even if Southwest reported income on an accrual basis, the bad debt was not accruable until at least 1976 because petitioner contested the liability. Finally, respondent maintains that if the bad debt was properly accrued in 1971, it is subject to the nonbusiness bad debt limitations of section 166(d). Petitioner argues that the $500,000 loan guaranty is an ordinary and necessary business expense, deductible under section 162(a). We disagree. For the following reasons, we hold Southwest reported income on the cash rather than the accrual basis. Consequently, petitioner's bad debt deduction is disallowed since he did not make payment on the guaranty during any of the taxable years in question. Section 446(a) requires taxable income to be comuted "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(b) further provides that "[i]f no method *91 of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Section 446(c) allows a taxpayer to compute taxable income, subject to the preceding provisions, under any of the following permissible methods of accounting: (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary. A taxpayer must secure the consent of the Secretary before changing the method of accounting on which taxable income is computed. Section 446(e). On petitioners' 1967 and 1968 joint Federal income tax returns, a Schedule C is attached indicating that Southwest reported income based upon the cash method of accounting. Although these taxable years are not at issue in the instant case, the returns are nonetheless relevant because petitioner would have had to have received the consent of the Secretary under section 446(e) to compute the taxable income of Southwest under *92 a method of accounting other than the cash method for 1969 or any of the taxable years at issue. Petitioner, however, neither argues nor do we find that Southwest received consent to change from the cash to the accrual method of accounting. Although Finlan indicated on each of petitioners' returns that Southwest reported income based on the accrual method, he in fact computed Southwest's gross receipts (i.e., the brokerage fees earned by petitioner) from bank deposits made by petitioner. Gross receipts were thus calculated on the cash basis while the bad debt deduction was accrued. Since a taxpayer who uses the cash method of accounting for reporting gross income from his trade or business is required to use the cash method in computing the expenses of such business, Southwest's net profit as calculated by Finlan did not clearly reflect income. ; section 1.446-1(c)(1)(iv)(a), Income Tax Regs. Based on the record before us, we conclude that Southwest was required to report under the cash method of accounting. Petitioner has not made payment on the loan guaranty or the district court judgment which found him liable for the loan *93 amount plus interest. Since a cash method taxpayer is not entitled to a deduction for a bad debt or loss unless he has made an outlay of cash or property having a cash value, ; ; see , we sustain respondent's disallowance of petitioners' bad debt deduction and the net operating loss carry-backs and carry-forwards which resulted therefrom. Having held that petitioners were not entitled to report on the accrual basis for the years in issue, we do not reach the question of whether any bad debt deduction was accruable in 1971 or thereafter or whether the debt was a business or nonbusiness bad debt. Addition to Tax for Negligence
Respondent determined that petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Petitioners have the burden of proof on this issue. Rule 142(a). We believe petitioner's actions support a determination of negligence. When petitioners' accountant (Finlan) asked petitioner whether Southwest reported income on a cash or accrual basis, petitioner told him *94 Southwest employed the accrual method, and Finlan prepared the returns for the years in question in reliance upon this misrepresentation. Petitioner had indicated, however, on prior income tax returns that Southwest reported income on a cash basis. Petitioner further attempted to deceive Finlan by showing him a ScheduleC from his 1962 return which indicated the accrual method was used for a different company which had become bankrupt.Petitioner's actions are sufficient to support the addition to tax for negligence under section 6653(a). Addition to Tax for Failure to Timely File a Return
Respondent also determined that petitioners are liable for the addition to tax under section 6651(a)(1) [6] *95 for failure to timely file returns for each of the years at issue. Each of petitioners' returns were filed on August 29, 1974, beyond their prescribed time. Petitioners may avoid the addition to tax for late filing, however, if they can show that their failure to file was due to reasonable cause and not due to willful neglect. Section 6651(a)(1). Petitioners have shown neither, and therefore the addition to tax under section 6651(a) is sustained. =P0001*13 Self-Employment Tax
The final issue for decision is whether petitioner is liable for self-employment tax [7] in the amount of $585.00 for 1971. Petitioner introduced no evidence contrary to respondent's determination and therefore has not carried *96 the burden of proving that he is not liable for the asserted tax. Rule 142(a). Respondent's determination of self-employment tax is therefore sustained. [8]
Decision will be entered for the respondent.
Footnotes
1. Respondent issued separate notices of deficiency because petitioners filed separate individual income tax returns for the years at issue. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.
3. Petitioners were married during the taxable years at issue and resided in a community property state.Each petitioner reported on their respective individual income tax returns their one-half community share of the net profit from petitioner's mortgage brokerage business.Consequently, each petitioner reported one-half of the bad debt deduction at issue.↩
4. Petitioners individually were each cash basis taxpayers.↩
5. The net operatig loss from 1971 was not carried forward to petitioners' 1972 income tax returns because petitioners' taxable income was negative in that year. Consequently, petitioners' 1972 taxable year is not at issue in this case.↩
6. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) ADDITION TO THE TAX.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *↩
7. See sections 1401-1403 regarding tax on self-employment income. ↩
8. At trial, the Court reserved its ruling on respondent's objections to certain exhibits stipulated in the record. Since none of the exhibits objected to by respondent were relied upon by the Court, it is unnecessary to rule upon the objections raised.↩